# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS VALENZUELA RODRIGUEZ, | CASE NO. 1:10-cv-00858 DLB PC |
| Plaintiff, | SECOND SCREENING ORDER |
| v. | ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND |
| SUSAN HUBBARD, et al., | |
| Defendants. | THIRTY-DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT |

**Screening Order**

### I.   Background

Plaintiff Luis Valenzuela Rodriguez ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on May 5, 2010, in the Sacramento Division of this court. (Doc. 1.) Plaintiff's case was transferred to the Fresno Division in the Eastern District of California on May 14, 2010. (Doc. 4.) Plaintiff filed a first amended complaint on August 19, 2010. On March 8, 2011, the Court screened the first amended complaint and ordered Plaintiff to either file a second amended complaint or notify the Court of his willingness to proceed only on the claims found cognizable. (Doc. 12.) On June 9, 2011, Plaintiff filed a second amended complaint. (Doc. 15.) Thereafter, on July 27, 2011, Plaintiff requested leave to file a third amended complaint. (Doc. 16.) On September 20, 2011, the Court granted Plaintiff's motion to file a third amended complaint. (Doc. 17.) On October

27, 2011, Plaintiff notified the Court that he was unable to file a third amended complaint and asked that the Court proceed with his second amended complaint. (Doc. 18.) Based on Plaintiff's request, the second amended complaint is presently before the Court for screening.

## II.     Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*

## III.    Summary of Plaintiff's Second Amended Complaint

Plaintiff is currently a state prisoner at Kern Valley State Prison ("KVSP") in Delano, California, where the majority of the acts he complains of occurred. Plaintiff names the following defendants: Susan Hubbard, Director of the California Department of Corrections and Rehabilitation ("CDCR"); S. Lopez, Chief Medical Officer/Health Care Manager of KVSP; K. Harrington and M. Biter, Acting Wardens of KVSP; Soto, Captain at KVSP; Tiesdale and Phillips, Correctional Lieutenants at KVSP; Bell, Ozeta, S. Gregory, and Betzinger, Sergeants at KVSP; Green, Transportation Sergeant at Mule Creek State Prison; Garza, McAllister, Banger,

1  Cano, and Anderson, correctional officers at KVSP; Akanno, S. Schaefer, Delio, Patel, Grassi,
2  Spaeth, Chen, Guiang, Horton, and Vilchez, medical doctors at KVSP; Brecena, registered nurse
3  at KVSP; Tredwell, Akpan, James, John and Jane Does I-V, vocational nurses at KVSP; Freire
4  and Rankin, mental health at KVSP; C. Wegman, Community Services Manager at KVSP; Ron
5  Alec, chaplain at KVSP.

6        Plaintiff alleges the following:  Plaintiff was transferred from Mule Creek State Prison to
7  KVSP on February 11, 2009.  He alleges that the Disability Review Board was deliberately
8  indifferent by transferring him to KVSP without ensuring that his ongoing medical needs would
9  be met upon arrival.

10        On February 11, 2009, Correctional Officer Green of Mule Creek State Prison and John
11  Doe took Plaintiff's personally owned walking cane, which Plaintiff was authorized to have and
12  was needed for walking.  Plaintiff contends that the cane was taken in retaliation for Plaintiff's
13  filing of complaints against Defendant Green and others over the previous year.  Doc. 15, p. 11.

14        Further, on February 11, 2009, during medical intake at KVSP, Plaintiff notified
15  Defendants Becena and Akanno of his medical needs, including an ADA housing
16  accommodation, a cane, heart medications, blood pressure medications, pain medications,
17  catheter supplies and diapers.  Plaintiff asserts that Defendants Akanno and Becena were
18  deliberately indifferent to his medical needs, which exacerbated his chronic pain.  He was forced
19  to hobble without a cane for about two weeks, he was assigned to a second tier cell, he did not
20  receive his p.m. medications, he did not receive his heart and blood pressure medications for a
21  number of days, he did not receive catheter supplies and diapers for about 1 month, his Vicodin
22  was discontinued and he did not receive a double mattress for weeks.  Doc. 15, pp. 11-12.

23        When placed in an upper tier cell, Plaintiff informed Defendant Jane or John Doe, a
24  licensed vocational nurse, of his medical needs.  Plaintiff was told to submit a medical request
25  form.  In fear and panic, Plaintiff called "man down" so he could get to a hospital.  At the
26  hospital, Plaintiff was given catheter supplies, diapers and medications.  He was forced to
27  smuggle a catheter tube from the hospital back to KVSP to use until he could acquire a doctor's
28

order for needed supplies and medication. Doc. 15, p. 13.

On February 13, 2009, Defendant Schaefer wrote a medical order for Plaintiff to be allowed diapers. Doc. 15, p. 13.

On March 1, 2009, Defendant Akanno wrote a medical order for Plaintiff to receive catheter supplies. Doc. 15, p. 13.

At some point, Defendant Akanno discontinued Plaintiff's Vicodin and replaced it with Tylenol-3, which Plaintiff refused after trying it for a few weeks. Doc. 15, p. 14.

On March 23, 2009, Defendant Schaefer referred Plaintiff for outside pain management. On May 9, 2009, the referral was modified for another MRI. Defendant Schaefer again referred Plaintiff for outside pain management. There was no outside referral. Doc. 15, p. 14-15.

On August 10, 2009, Plaintiff was referred to Defendant Guiang. He was provided Tramidol to start, along with Neurontin. The Tramidol did not work. Doc. 15, p. 15.

An August 29, 2009, MRI report allegedly stated that there was too much hardware in Plaintiff's lower spine to make any meaningful assessment of nerve damage. Doc. 15, p. 15.

Between February 11, 2009 and the date of the complaint, Plaintiff contends that Defendants Akanno, Schaefer, Patel, Delio, Grassi, Chen, M. Spaeth and S. Lopez were deliberately indifferent and disregarded Plaintiff's chronic pain by continuing to deny or to discontinue Plaintiff's needed pain medications, Vicodin and Gabapitin. Doc. 15, pp. 15-16. In August 2010, Plaintiff alleges that in retaliation for his verbal and written complaints, he was "cut off" of Tramidol and Neurontin (Gabapitin). He was told by Defendants Delio, Patel, Schaeffer, Vilches, Chen, Horton, Spaeth and S. Lopez that he would be provided with Tylenol, aspirin, Motrin or Naproxen for his pain. Plaintiff allegedly informed them that these did nothing to relieve his pain levels and problems. Doc. 15, p. 16.

Since September 2006, Plaintiff contends that he has required the periodic use of a wheel chair. After his arrival at KVSP, he continued to need periodic use of a wheelchair and requested a medical chrono authorizing such use from Defendants Schaeffer, Delio and Patel. He continued to be denied authorization for a wheel chair and was forced to acquire a wheel chair by

other means between February 11, 2009 and August 2010, when recovered by staff.  Doc. 15, p. 16.

In 2010 and 2011, Defendants Horton and Delio informed Plaintiff that they would refer his case to the KVSP pain management team for consideration of Tramidol for pain.  Although there are no medical records of referral, Defendants Horton and Delio claimed that the KVSP pain management team had rejected Plaintiff's need for narcotic pain medications.  Doc. 15, p. 17.

Between May 20 and November 14, 2010, Defendants James, Akpan, Ruiz and John and Jane Does I-IV denied Plaintiff his catheter supplies.  Plaintiff was forced to file various complaints ("602s").  Although his 602s were granted, the licensed vocational nurses continued to refuse to provide medications and supplies.  Plaintiff was forced to make his own diapers out of plastic bags and pieces of cloth.  Many times, Plaintiff was given extremely large, bright blue plastic diapers, which he has refused to accept since November 3, 2010.  Doc. 15, p. 17.

Between February 11, 2009, through the filing of this action, Plaintiff has periodically been forced to go without his medications, such as Plavix, Atenol, Lasix and aspirin.  Defendants John and Jane Doe, Tredwell, Patel, Delio, and Horton were responsible for occasions without medication.  Defendant Tredwell allegedly falsified medical records to state that she was giving him medications in November 2010.  She acted in conspiracy with Defendants McAllister, Badger, Lane and John Doe.  Doc. 15, p. 18.

Supervising Sergeant John Doe had Plaintiff's cell blatantly "tossed up" by McAllister and Badger, exposing confidential documents to Plaintiff's cellmate.  Defendants McAllister and Badger removed notes and other items from Plaintiff's cell in retaliation for Plaintiff's request for medical attention for heart and chest pains.  Doc. 15, p. 19.  Defendants McAllister and Badger failed to provide Plaintiff with a cell search receipt in order to conceal the items taken from the cell.  Plaintiff's 602 complaint was rejected by the appeals coordinator because he did not have a cell search receipt.  Doc. 15, p. 20.

Defendant Tredwell allegedly falsified a disciplinary report against Plaintiff.  Lieutenant

Snow reportedly agreed that Defendant Tredwell falsified the report and dismissed the action. Plaintiff states this his 602 complaints were the motive for retaliation by Defendants McAllister, Anderson and Tredwell.  Plaintiff contends that staff complaints against Defendants McAllister, Badger and Tredwell "disappeared" after mailing to the appeals office.  Doc. 15, p. 19.

Plaintiff alleges that in response to his complaint of heart and chest pains in 2010, Defendant McAllister moved Plaintiff to a property/behavior management cell that had no shelves, no electrical outlet for his TV and no desk or stool for writing.  Defendant Bell reportedly approved the change of cell request, which was submitted by Defendant McAllister immediately after Plaintiff was taken to the medical treatment area.  Doc. 15, p. 20.

In a transfer order, Defendants Hubbard, Theil and McCarver reportedly ordered that Plaintiff would continue to be treated by his coronary physician at the University of California, Davis Medical Center for his heart stents.  Defendants Harrington, Lopez, Schaefer and Spaeth refused to abide by the order to have Plaintiff transported back to the Davis Medical Center.  On April 7, 2009, Plaintiff saw Dr. Singh at Kern Coronary Medical, but Dr. Singh did not have Plaintiff's medical records or medication information.  Doc. 15, p. 21.

After an attempted murder attack on December 12, 2009, Plaintiff complained about blurred vision and eye irritation.  About a week later, Plaintiff returned to Kern Medical Center and was discovered to have a cut cornea requiring treatment.  Plaintiff continues to suffer from headaches and eye pains from his head injuries.  Plaintiff complained to KVSP doctors about his symptoms, but was ignored.  Doc. 15, p. 21.

On May 20, 2009, Plaintiff was removed from his mental health Enhanced Out-Patient ("EOP") specialized program status by Defendants Freire and Rankin in retaliation for complaints against Defendants Garza and Freire.  Plaintiff contends that the removal occurred while he was in the law library in denial of his due process hearing rights.  Doc. 15, p. 22. Defendant Freire's mental health notes identified Plaintiff as litigious.  Plaintiff had filed complaints against Defendant Freire.  Defendant Freire claimed to have cured Plaintiff of his extensive mental health problems in a few 10-15 minute discussions.  Defendant Freire fraudulently invalidated Plaintiff's mental health care status and needs, which contributed to the

attempted murder against Plaintiff on December 12, 2009, and four subsequent assaults by inmates, including assaults on August 27, October 29 and November 3, 2010.  Plaintiff also was shot three times.  Doc. 15, p. 22.

**Religious Artifacts**

Plaintiff is a Native American inmate and is a practitioner of Native American religion.  A central part of his religious practices involves the daily smoking of his prayer pipe.  Since his arrival at KVSP on February 11, 2009, he has been denied his central religious practices, which include weekly sweat ceremonies, daily smoking of prayer pipe, use and possession of tobacco and daily smudging practice.

On or about March 2009, Defendant Garza confiscated Plaintiff's prayer pipe.  Defendant Garza failed to provide Plaintiff with any written notice or receipt for the confiscated religious artifacts, including the sacred pipe, two sacred hawk wings, two sacred owl wings, four loose eagle feathers, a leather pipe bag, loose necklaces and sacred ties with sacred abalone shell eagle head carving medallion.  Defendant Garza verified with Plaintiff that the items were Plaintiff's and were considered religious artifacts.  Defendant Garza informed Plaintiff that he had to provide a signed Trust Account Withdraw form for postage and an address to mail the artifacts.  Plaintiff signed the form and provided the address of his attorney.  Defendant Garza responded that he would mail out the religious artifacts and Sergeant Ozeta was in agreement with the decision.  Doc. 15, pp. 23-24.

Plaintiff sought the assistance of the Native American Religious Group's co-chairman, inmate Madrid, and was informed that the religious artifacts were seized from Defendant Garza, were taken to Lieutenant Phillips' and Captain Soto's office and would be returned to Plaintiff after a new chrono was written for Plaintiff.  Lieutenant Phillips informed Plaintiff that the religious artifacts would remain in the office until a chrono could be generated.  After a month and a half, Plaintiff asked Lieutenant Phillips about the delay in generating in a chrono.  Plaintiff was told that a new Native American Religious Advisor was being employed at KVSP and they were going to wait to see what he had to say.  Another two months passed and Plaintiff spoke to Captain Soto about the delay.  Captain Soto provided the same reason.  Plaintiff filed inmate

appeals, but they were summarily rejected because he did not have receipts for the confiscated religious artifacts.   Doc. 15, pp. 24-25.

On December 12, 2009, two inmates committed an attempted murder of Plaintiff as a direct result of the controversies concerning the desecration and confiscation of the sacred religious artifacts.  Plaintiff continued to file administrative appeals.  He was forced to go on a suicide watch as a result of the attempted murder and the continued deprivations and denial of his Native American Religious artifacts and practices.  Doc. 15, pp. 26-27.

Plaintiff was placed in administrative segregation during the investigation of the attempted murder.  After 90 days, Plaintiff was informed that he was being referred for transfer out of KVSP and would be held in administrative segregation pending referral of Plaintiff to the Director's Review Board.  Plaintiff continued to file written requests to the Native American Spiritual Advisor, Chaplain Ron Alec, and to C. Wegman to be provided Native American religious services while in administrative segregation.  Plaintiff's requests were ignored.  His request for religious services and counseling while in KVSP B-3 overflow unit pending transfer have continued to be ignored.

At some point, Plaintiff was informed by his wife that C. Wegman had attempted to mail her the sacred pipe.  She refused to accept the mail.  Plaintiff filed an administrative appeal concerning Defendant Wegman's attempts to mail out the sacred pipe.  Plaintiff has learned that Defendants Wegman, Harrington, Phillips, Alec and John Does intend to or have mailed out Plaintiff's sacred pipe and bag.  Plaintiff did not receive any written notice of the intended decision or action.  Plaintiff wrote letters of complaint directly to Warden Harrignton. Plaintiff also alleges that Defendants Harrington, Wegman, Alec, Phillips and Garza refused to respond or to return administrative complaints.  Doc. 15, pp. 27-29.

Plaintiff claims the following: (1) violations of his First Amendment right to free speech and to petition the government through the administrative appeals process; (2) deliberate indifference to his serious medical needs in violation of the Eighth Amendment; and (3) retaliation.  As relief, Plaintiff seeks money damages, declaratory relief, and injunctive relief.

IV.    **Plaintiff's Claims**

    1.    **Deficiencies of the Second Amended Complaint**

        A.    **Rule 8(a)**

Under federal notice pleading, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but, as stated above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555, 127 S.Ct. at 1955), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Factual allegations are accepted as true but legal conclusions are not, and Plaintiff is required to present factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S. Ct. at 1949-50.

Plaintiff's second amended complaint exceeds 225 pages, consisting of more than thirty-five handwritten and typed pages, plus exhibits. The second amended complaint fails to comply with Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's rambling, repetitive narrative does not clearly or succinctly allege facts.

Furthermore, twenty-five pages is more than sufficient for Plaintiff to identify his claims and set forth specific facts in support of those claims. <u>If Plaintiff chooses to amend his complaint, his amended complaint may not exceed twenty-five pages in length, and it will be stricken from the record if it violates this page limitation</u>.

        B.    **Rule 18**

As with his first amended complaint, Plaintiff again alleges multiple unrelated claims in the second amended complaint. The Court previously notified Plaintiff that he may not proceed in one action on a myriad of unrelated claims against different staff members. As one court explained:

> The controlling principle appears in Fed.R.Civ.P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

In this instance, Plaintiff's complaint recites various encounters with prison officials and staff, some of which are not related to others. Plaintiff is again instructed that he will not be permitted to pursue unrelated claims in this action. In amending, Plaintiff should determine which related claims he wishes to pursue and re-allege those claims only. <u>If Plaintiff's amended complaint again violates Rule 18(a) despite this admonition, the Court will decide which claims shall proceed</u>.

### C. Doe Defendants

Plaintiff names John and Jane Doe defendants in this action. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

### D. Certain Named Defendants

Plaintiff has failed to include any factual allegations in his complaint related to named defendants Gregory, Betzinger and Cano.

## 2. Legal Standards

In the paragraphs that follow, the Court again will provide Plaintiff with the legal standards that appear to apply to his claims. Plaintiff should carefully review the standards and amend only those claims that he believes, in good faith, are cognizable. Plaintiff also should be mindful of the Court's admonition that he only pursue related claims on amendment.

### A. Supervisory Liability

Plaintiff alleges that defendant Susan Hubbard, as Director of CDCR, maintained responsibility for his physical and mental health care and endorsed his transfer to KVSP in deliberate indifference or reckless disregard to his serious medical needs. Plaintiff also alleges that Defendant Hubbard, along with Wardens Harrington and Biter, were under a duty to ensure that their subordinates adhere to CDCR mandates. In addition, Plaintiff alleges that S. Lopez, the Chief Medical Officer/Health Care Manager at KVSP, is responsible for the medical care of all KVSP inmates, including the supervision of medical staff.

Plaintiff appears to be alleging liability based on the supervisory role of these Defendants. Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisor position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under § 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under § 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

In his amended complaint, Plaintiff fails to allege any facts indicating that defendants Hubbard, Lopez, Harrington or Biter personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646.

11

Plaintiff's claim of "conspiracy" is unsupported by any factual allegations.  Plaintiff thus fails to state a cognizable § 1983 claim against defendants Hubbard, Lopez, Harrington or Biter.

### B.     First Amendment - Free Exercise

Plaintiff includes numerous allegations concerning the denial of his religious artifacts and religious practices.  Doc. 15, pp. 23-29.  These allegations are unrelated to Plaintiff's claim for deliberate indifference to his medical needs in violation of the Eighth Amendment.

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348  (1987) (internal quotations and citations omitted).  The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.  Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).

Plaintiff alleges that he has been denied his religious practices and his religious artifacts, but he has not asserted a separate cause of action against any defendant based on a First Amendment right to freely exercise his religion.  Rather, Plaintiff's First Amendment claim is based on retaliation for filing administrative grievances.  As discussed below, Plaintiff will be given an opportunity to amend his complaint to cure this deficiency.  If Plaintiff amends his complaint, however, he may not allege unrelated claims against different KVSP staff members.

### C.     Inmate Appeals Process

Plaintiff claims a violation of his entitlement to "timely, fair and meaningful redress of grievances" through the administrate appeals process.  Doc. 15, p. 30.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the

fourteenth amendment." Azeez, 568 F.Supp. at 10; Spencer v. Moore, 638 F.Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a section 1983 action. Buckley, 997 F.2d at 495. Thus, Plaintiff cannot state a cognizable claim related to the grievance/appeal process.

**D.     First Amendment - Retaliation**

Plaintiff asserts that Defendants Hubbard, Harrington, Wegman, Soto, Phillips, Lopez, Daveiga, Tarnoff, Ozeta, Garza, McAllister, Anderson, Badger, Tredwell, Freire, Rankin, Green, Alec, James, Delio, Patel and Ruiz retaliated against him for exercising his rights to speech or to petition the government.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).[1]

As discussed above, Plaintiff fails to state a cognizable claim against Hubbard, Harrington and Lopez in their supervisory roles. Plaintiff fails to state a cognizable claim against Daveiga, Tarnoff, and Ruiz, who are not named as defendants to this action. Plaintiff fails to state a cognizable claim against Anderson because there are no factual allegations against this defendant. Plaintiff fails to state a cognizable claim against Patel, Delio and James for retaliation as Plaintiff's allegations against these defendants relate to his medical needs and deliberate indifference claims. Plaintiff fails to state a cognizable retaliation claim against Wegman, Soto, Ozeta, Garza, Phillips and Alec because Plaintiff's allegations against these defendants relate to

---

[1]     To the extent Plaintiff attempts to assert a separate retaliation claim based on the Fourteenth Amendment, he may not do so.

the confiscation of religious artifacts. Defendant Green is not employed at KVSP and, thus, Plaintiff's claims against him are unrelated to his claims against KVSP correctional officers and staff.

Plaintiff states a cognizable claim against Badger and McAllister, who reportedly "tossed up" his cell, and Tredwell, who reportedly falsified Plaintiff's medical records and refused him medications. Plaintiff states a cognizable claim against Freire and Rankin, who reportedly removed Plaintiff from EOP status in retaliation for Plaintiff filing complaints against Garza and Freire.

### D. Eighth Amendment - Deliberate Indifference

Plaintiff claims that Lopez, Akanno, Schaefer, Chen, Delio, Patel, Horton, Grassi and Spaeth were deliberately indifferent to his medical needs. Plaintiff also claims that James, Akpan, Ruis and Tredwell violated his right to medical care.

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991) (*overruled on other grounds by* WMX Techs., Inc. V. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). A medical need is serious "if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994).

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny,

delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

*Lopez*

As discussed above, Plaintiff fails to state a cognizable claim against Lopez in his supervisory role.

*Akanno*

Plaintiff claims that Akanno was deliberately indifferent to Plaintiff's medical needs on February 11, 2009, during medical intake processing. More specifically, Plaintiff asserts that Dr. Akanno discontinued his Vicodin pain medication and denied him catheter supplies. Doc. 15, pp. 11-12. Plaintiff subsequently alleges that on March 1, 2009, Dr. Akanno wrote an order for Plaintiff to receive catheter supplies. Doc. 15, p. 13. Dr. Akanno also prescribed Plaintiff Tylenol-3 for pain. Doc. 15, p. 14. Plaintiff fails to state a claim against Dr. Akanno for deliberate indifference to his medical needs.

*Schaefer*

Plaintiff claims that Defendant Schaefer disregarded Plaintiff's chronic pain by discontinuing his needed pain medications (Vicodin). However, Plaintiff admits that he was

prescribed pain medications and that Schaefer attempted to refer Plaintiff to outside pain management on several occasions.

Plaintiff also claims that Schaefer failed to prescribe a wheelchair, which Plaintiff periodically required. However, this appears to be a mere difference of opinion between Plaintiff and his physician. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted). Plaintiff thus fails to state a claim for deliberate indifference against Schaefer.

*Chen*, *Spaeth*, *Delio, Patel, Grassi and Horton*

Plaintiff claims that Chen, Spaeth, Delio, Patel, Grassi and Horton failed to provide Plaintiff with needed narcotic medications. Plaintiff fails to state a cognizable claim because he admits that he was prescribed medications for pain.

Plaintiff also claims that Delio, Patel and Horton denied Plaintiff's requests for a wheelchair. As with his allegation against Schaefer, Plaintiff fails to state a cognizable claim because this amounts to a mere difference of opinion between a prisoner-patient and treating physician. Franklin, 662 F.2d at 1344.

*Akpan and James*

Plaintiff contends that Defendants Akpan, James and Ruiz, vocational nurses at KVSP, refused to provide Plaintiff with needed catheters. Read liberally, the allegations in Plaintiff's amended complaint state a cognizable deliberate indifference claim against Defendants Akpan and James.

*Tredwell*

Plaintiff contends that Defendant Tredwell failed to provide Plaintiff with medications and falsified medical reports to state that he received the medications. Construed liberally, the allegations in Plaintiff's amended complaint state a cognizable deliberate indifference claim

against Defendant Tredwell.

*Ruiz*

Ruiz is not named as a defendant in Plaintiff's amended complaint.

## V. CONCLUSION AND ORDER

Although Plaintiff has stated certain cognizable claims, he has not complied with Rule 18, Rule 8 or the Court's prior screening order. However, the Court will provide Plaintiff with a final opportunity to amend his complaint curing the deficiencies identified in this order.

If Plaintiff decides to amend, the amended complaint should be brief and should not exceed 25 pages. Plaintiff must provide a short and plain statement of what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 129 S. Ct. at 1949.

Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Moreover, Plaintiff may not assert multiple unrelated claims against different correctional officers or staff members. Fed. R. Civ. P. 18.

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," L. R. 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's second amended complaint is dismissed for failure to state a claim, with leave to file a first amended complaint within **thirty (30) days** from the date

of service of this order; and

3. <u>If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to obey a court order and failure to state a claim</u>.

IT IS SO ORDERED.

Dated:   **December 19, 2011**                    **/s/ Dennis L. Beck**
                                                                         UNITED STATES MAGISTRATE JUDGE