**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS VALENZUELA RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>SUSAN HUBBARD, et al.,<br><br>Defendants. | Case No. 1:10-cv-00858-DLB PC<br><br>**ORDER DISMISSING CERTAIN CLAIMS**<br><br>ECF No. 23 |

I. **Background**

Plaintiff Luis Valenzuela Rodriguez ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se in this civil action pursuant to 42 U.S.C. § 1983. On May 5, 2010, Plaintiff filed his complaint in the Sacramento Division of the Eastern District of California. On May 14, 2010, the case was transferred to the Fresno Division. On August 19, 2010, Plaintiff filed his First Amended Complaint. On March 18, 2011, the Court issued an order for Plaintiff either to amend his complaint or notify the Court that he wished to proceed only on the claims found to be cognizable. On June 9, 2011, Plaintiff filed his Second Amended Complaint. On December 19, 2011, the Court dismissed the Second Amended Complaint for failure to comply with the Court's prior order. On February 29, 2012, Plaintiff filed his Third Amended Complaint. ECF No. 23.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

## II.  Summary of Third Amended Complaint

Plaintiff was previously incarcerated at Kern Valley State Prison ("KVSP") in Delano, California, where the events giving rise to this action occurred. Plaintiff names as Defendants former director of CDCR Susan Hubbard; secretary of CDCR Matthew Cate; K. Harrington, former warden of KVSP; M. Biter, acting warden of KVSP; R. Davis and D. Foster, chiefs of the inmate appeals branch for the Director's level of CDCR; R. Grissom, associate warden at KVSP; B. Daveiga, appeals coordinator at KVSP; Soto, correctional captain; M. Phillips and R. Speidell, lieutenants at KVSP; F. Ozaeta, S. Gregory, and M. Betzinger, correctional sergeants at KVSP; J. Garza, correctional officer at KVSP; C. Wegman, community partnership manager at KVSP; Ron Alic, Native American chaplain at KVSP; and Freir and Rankin, psychologists at KVSP.

Plaintiff's complaint is composed of three claims, which the Court will discuss below.

### A.  Religious Practice

Plaintiff arrived at KVSP on February 11, 2009. Pl.'s Third Am. Compl. ¶ 1. Plaintiff has been a participant in the enhanced outpatient program ("EOP") for mental health care. Since 1994, Plaintiff has been recognized as a sacred "pipe holder" in CDCR. *Id.* ¶ 4. Plaintiff used tobacco as an essential herb in his daily smoking for sacred prayer. *Id.* ¶ 5. Plaintiff owned his own sacred prayer pipe within the CDCR since May of 2001. *Id.* ¶ 6. Plaintiff provided Defendants with documents of documents dated since 2001 through 2009 verifying possession and ownership and possession of prayer pipe, pipe bags, hawk wings, and owl wings. . *Id.* ¶ 7.

Defendants refused to enforce state and federal laws which established rights protecting Native American religious practices and sacred religious artifacts from February 11, 2009 to

February 11, 2012. *Id.* ¶¶ 8, 9. Plaintiff submitted 602 inmate grievances complaining of sweat lodge access, sacred pipe ceremonies, ceremonial tobacco use, lack of access to a Native American spiritual advisor/chaplain, and not providing Native American religious services for KVSP administrative segregation. *Id.* ¶¶ 9, 10. Plaintiff resubmitted his grievance on March 2, 2009. Defendant Garza threatened Plaintiff with removal from the EOP program for the filing of the 602 grievances. *Id.* ¶ 11.

On March 24, 2009, Defendant Garza confiscated Plaintiff's sacred pipe, sacred pipe bag, enclosed medicine bundle, two sacred hawk wings, two sacred owl wings, loose eagle feathers and a few spiritual necklaces. *Id.* ¶ 12. Plaintiff complains that Defendant Garza mishandled and wrongfully confiscated sacred religious artifacts. *Id.* Defendant Garza informed Plaintiff that all his religious artifacts would be discarded unless Plaintiff signed a statement that he authorized withdrawal from his prison account to send his items. *Id.* ¶ 22. Plaintiff complied with the demand rather than have the religious items discarded. *Id.* ¶ 25.

Plaintiff provided Defendant Garza with a 602 inmate grievance on March 25, 2009. *Id.* ¶ 27. Defendant Garza told Plaintiff that he did not accept 602 inmate grievances, and told Plaintiff to set it down on the chair in the C-8 block's captain's office. *Id.* ¶ 28. Defendant Garza later told Plaintiff that he could not get his stuff because he kept filing complaints. *Id.* ¶ 30. Defendant Garza stated that he would talk to Defendant Freir and have Plaintiff removed from EOP. *Id.* ¶ 31. Plaintiff informed other Native American inmates, who would contact Defendants Phillips and Soto. *Id.* ¶ 34.

Plaintiff spoke to Defendant Ozaeta and informed him of the problem; he stated that he had already been informed by Defendant Garza and had told Defendant Garza that he could do whatever he wanted to do with the Indian stuff. *Id.* ¶ 35. Defendants Captain Soto and Lieutenant Phillips acquired possession of Plaintiff's religious artifacts, and told Plaintiff that they would hold the items while they looked into the problem. *Id.* ¶ 36.

Plaintiff was finally able to get a 602 grievance accepted and processed on January 17, 2010, which was denied by Defendant Betzinger on March 24, 2010; submitted on April 15, 2010, and partially granted by Defendants Gregory and Grissom on May 19, 2010; submitted on May 25, 2010,

3

and denied at the second level by Defendant M. Biter on June 18, 2010; and submitted June 25, 2010, and denied at the third level by Defendants Davis and Foster on October 8, 2010, specifically concerning the wrongful confiscation and deprivation of the religious artifacts. *Id.* ¶ 40.

On August 27, 2010, Defendants Wegman and Alic required Plaintiff to provide them an address to mail his sacred pipe, hawk and owl wings, and a few loose feathers, or the items would be destroyed. *Id.* ¶ 45. Defendants Wegman and Alic refused to provide Plaintiff with a reason for refusing to return the artifacts to Plaintiff, or allow him periodic access or use of the artifacts. *Id.* ¶ 46. Plaintiff was continually told by Defendants Garza, Betzinger, Gregory, Speidell, Wegman, and Alic that Plaintiff brought on the confiscation and total deprivation because of his filing on March 2, 2009. *Id.* ¶ 47.

Plaintiff further alleges that Defendants Hubbard, Cate, Harrington, Biter, Soto, Phillips, Da Veiga, Ozaeta, Betzinger, Gregory, Garza, Wegman, Alic, Grissom, Speidell, Davis, and Foster were informed of and knew that their actions deprived Plaintiff of the use of sacred prayer pipe, weekly sweat lodge ceremonies, and possession of the wings/feathers. *Id.* ¶ 74. Plaintiff was denied Native American religious services between December 12, 2009 and February 1, 2012. Id. Plaintiff received only one sweat lodge service between February 2009 and October 2009, and no sweat lodge services from November 2009 to February 2012. Id. Plaintiff also complains that the Defendants denied him access to a spiritual advisor, with access once between February 2009 to June 2009 and no access from December 2009 to February 2012. Id. Plaintiff complains that other religious groups, such as Catholics and Protestants who have weekly services, Native American religious groups were denied regular, established practices of weekly sweat lodge services or sacred pipe ceremonies. Id. ¶ 76.

### B.     Processing Appeals

Plaintiff's grievance, KVSP-0-09-00980, first submitted on March 2, 2009, had to be submitted multiple times because it was continuously rejected by Defendant B. Da Veiga, who used exaggerated excuses to prevent process and exhaustion. *Id.* ¶ 48. Defendant Da Veiga rejected the grievance seven times, and the grievance disappeared after Plaintiff re-submitted it for the eighth time. *Id.* ¶ 49. Plaintiff submitted an administrative notice on October 25, 2009 directly to

4

Defendant Harrington concerning the conduct of his subordinates in refusing to respond to 602 inmate grievances. Defendant Harrington did not provide any response. *Id.* ¶ 53.

### C. Inmate Attack

On December 12, 2009, Plaintiff was stabbed by two purported Native American inmates on the KVSP facility C yard. *Id.* ¶ 55. Plaintiff as the sacred pipe holder was obligated, as stated by other inmates, to protect the sanctity of the pipe from desecration or wrongful confiscation, with violence if necessary. *Id.* ¶ 57. Plaintiff had complained to Defendants Freir and Rankin and other KVSP staff that his life and safety was placed in danger between February 2009 and December 2009. *Id.* ¶ 58. As a result of this attempted murder, Plaintiff was stabbed numerous times in his face, head, eye, and back, and suffered a punctured lung. *Id.* ¶ 59. Plaintiff was also kicked in the head and face, suffering a swollen face, months of dizzy spells, and continued headaches. *Id.* ¶ 60. Defendants Freir and Rankin stated that in response to Plaintiff filing 602 inmate complaint against Defendants Freir, Rankin, and Garza, they removed Plaintiff from the EOP status in May 2009. *Id.* ¶ 63. Defendants' removal came in spite of numerous pleas by Plaintiff to remain in EOP, and knowingly exacerbated the threat of physical harm to Plaintiff. *Id.* ¶ 64. Plaintiff went on suicide watch twice in fear of being attacked. *Id.* ¶¶ 65, 66. After the attack, Plaintiff remained in administrative segregation from December 2009 to August 2010 pending transfer to another prison. *Id.* ¶ 68. Plaintiff suffered certain deprivations while in administrative segregation. *Id.* ¶ 69.

Plaintiff contends a violation of the First, Eighth, and Fourteenth Amendments, and violations of 42 U.S.C. § 1981, § 1983, and § 2000cc, the Religious Land Use and Institutionalized Persons Act of 2000. Plaintiff requests declaratory relief, nominal, compensatory, and punitive damages, and appropriate injunctive relief.

### III. Analysis

#### A. First Amendment – Free Exercise of Religion

The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342 (1987)); *see*

*Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Only beliefs which are both sincerely held and rooted in religious beliefs trigger the Free Exercise Clause. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)); *Callahan v. Woods*, 658 F. 2d 679, 683 (9th Cir. 1981)). Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." *Id.* A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.*

Plaintiff has sufficiently alleged a sincerely held belief, rooted in faith, as to possession and use of the sacred pipe, sacred bag, owl and hawk wings, and eagle feathers, and Native American religious services, including sweat lodges. Plaintiff has also sufficiently alleged that he was denied the right to practice his religion by Defendants Hubbard, Cate, Harrington, Biter, Soto, Phillips, Da Veiga, Ozaeta, Betzinger, Gregory, Garza, Wegman, Alic, Grissom, Speidell, Davis, and Foster for their alleged conduct.

Plaintiff also complained of being deprived spiritual counseling. If Plaintiff was requesting access to a spiritual clergyman, Plaintiff fails to state a claim. Prison officials have no affirmative obligation to provide appropriate clergy to inmates. *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993).

**B.    Fourteenth Amendment**

Plaintiff had alleged a violation of the Fourteenth Amendment with regards to his freedom of religion. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations and internal quotations omitted).

6

Thus, there is no Fourteenth Amendment due process claim regarding his religious practice.

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (quoting *Cruz v. Beto*, 405 U.S. 319, 321-22 (1972) (per curiam)). To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. *Cruz*, 405 U.S. at 321-22; *Shakur*, 514 F.3d at 891; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part on other grounds*, *Shakur*, 514 F.3d at 884-85. Plaintiff has sufficiently alleged an Equal Protection claim regarding his religious practice against Defendants Hubbard, Cate, Harrington, Biter, Soto, Phillips, Da Veiga, Ozaeta, Betzinger, Gregory, Garza, Wegman, Alic, Grissom, Speidell, Davis, and Foster. Plaintiff alleges that Native American groups are not provided weekly religious services, unlike other religions such as Catholics and Protestants.

### C.     Religious Land Use and Institutionalized Persons Act of 2000

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under *Turner*." *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (citing *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005)). The Supreme Court has noted "RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's

7

permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

RLUIPA claims are brought against governmental entities. *See* 42 U.S.C. § 2000cc-1(a) ("No *government* shall impose a substantial burden on the religious exercise of a person . . . .) (emphasis added); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1077 (9th Cir. 2008) ("RLUIPA, by its terms, prohibits only state and local governments from applying regulations that govern land use or institutionalized persons to impose a 'substantial burden' on the exercise of religion."). A RLUIPA claim against Defendants would thus be brought against Defendants in their official capacity. Claims against prison officials in their official capacity are essentially claims against the government entity that employ them, in this instance, the state. *Hafer v. Melo*, 502 U.S. 21, 26 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010).

State officials sued in their official capacity are immune from suits for damages under the Eleventh Amendment. *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). The United States Supreme Court found that states have not waived their Eleventh Amendment immunity from damages under RLUIPA. *Sossamon v. Texas*, 131 S. Ct. 1651, 1658-60 (2011). Thus, Plaintiff's RLUIPA claim for damages against Defendants in their official capacity is barred by the Eleventh Amendment.

With regards to injunctive relief, Plaintiff's RLUIPA claim will also fail. Plaintiff is no longer incarcerated at KVSP. Transfer to another prison renders the request for injunctive relief moot absent some evidence of an expectation of being transferred back. *Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

**D.    42 U.S.C. § 1981**

Section 1981 prohibits racial discrimination by private actors. *Cerrato v. S. F. Cmty. Coll. Dist.*, 26 F.3d 968, 971 n.4 (9th Cir. 1994). Plaintiff has failed to allege facts which indicate that Plaintiff was discriminated against on the basis of race.

### E.    42 U.S.C. § 1985

To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States.

*Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff fails to allege a conspiracy, and thus fails to state a claim under § 1985(3).

### F.    42 U.S.C. § 1986

"Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." *Cerrato*, 26 F.3d at 971 n.7. "A claim can be stated under [§] 1986 only if the complaint contains a valid claim under [§] 1985." *Karim-Panahi*, 839 F.2d at 626. Because Plaintiff fails to state a claim under § 1985, Plaintiff likewise fails to state a claim under § 1986.

### G.    Inmate Appeals

Plaintiff complains of the inmate appeals process. Plaintiff fails to state a claim. There is no due process right to a specific prison grievance procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (*Mann v. Adams*, 855 F.3d 639, 640 (9th Cir. 1988)).

Plaintiff also complains that Defendants retaliated against Plaintiff for filing the inmate grievances. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)

9

1  (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).  Based on Plaintiff's allegations, Defendant Garza threatened Plaintiff with removal from the EOP program for filing inmate grievances.  Plaintiff has sufficiently stated a retaliation claim against Defendant Garza.

### H. Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982).  In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that officials knew of and disregarded a substantial risk of serious harm to him.  *E.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  Mere negligence on the part of the official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  *Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128.

Based on Plaintiff's allegations, Plaintiff has sufficiently satisfied the first prong of an Eighth Amendment claim, regarding the serious harm.  Plaintiff has also sufficiently alleged facts which satisfy the second prong, deliberate indifference.  Plaintiff alleges that Defendants Harrington, Biter, Grissom, Soto, Da Veiga, Phillips, Ozaeta, Betzinger, Gregory, Wegman, Alic, Freir, and Rankin knew of Plaintiff's safety concerns as a direct result of the alleged desecration and wrongful confiscation of the sacred pipe and religious artifacts, and failed to take any actions to protect Plaintiff from the harm.  Compl. ¶ 96.

## IV. Conclusion and Order

Based on the foregoing, it is HEREBY ORDERED that:

1. This action proceed on Plaintiff's third amended complaint, filed February 29, 2012, against Defendants Hubbard, Cate, Harrington, Biter, Soto, Phillips, Da Veiga, Ozaeta, Betzinger, Gregory, Garza, Wegman, Alic, Grissom, Speidell, Davis, and

Foster for violation of the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment;

2. This action proceed against Defendant Garza for retaliation in violation of the First Amendment;

3. This action proceed against Defendants Harrington, Biter, Grissom, Soto, Da Veiga, Phillips, Ozaeta, Betzinger, Gregory, Wegman, Alic, Freir, and Rankin for deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment; and

4. All other claims are dismissed with prejudice for failure to state a claim.

IT IS SO ORDERED.

Dated: **September 28, 2012**                    /s/ *Dennis L. Beck*
                                                                  UNITED STATES MAGISTRATE JUDGE