# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIZ VALENZUELA RODRIGUEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>HUBBARD, et al.,<br><br>        Defendants.<br>_____/ | Case No.  1:10-cv-00858-LJO-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART<br><br>(ECF No. 62)<br><br>THIRTY-DAY DEADLINE |

## I.    PROCEDURAL HISTORY

Plaintiff Luiz Valenzuela Rodriguez, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 5, 2010.  This action is proceeding on Plaintiff's third amended complaint, filed on February 29, 2012, against 1) Defendants Hubbard, Cate, Harrington, Biter, Soto, Phillips, Da Veiga, Ozaeta, Betzinger, Gregory, Garza, Wegman, Alic, Grissom, Speidell, Davis, and Foster for violation of the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment; 2) Defendant Garza for retaliation in violation of the First Amendment; and 3) Defendants Harrington, Biter, Grissom, Soto, Da Veiga, Phillips, Ozaeta, Betzinger, Gregory, Wegman, Alic, Freir, and Rankin for deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment (ECF Nos. 23 & 27.)

Pending before the Court is Defendant Da Viega's, Phillips' Betzinger's, Gregory's,

1  Garza's Speidell's, Ozaeta's, Wegman's, Biter's, Alec's and Rankin's Motion to Dismiss, filed

2  pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 29, 2013.[1]  (ECF No. 62.)  Plaintiff

3  filed an opposition on January 27, 2014, and Defendants replied on February 13, 2014.  (ECF Nos.

4  73 & 76.)  The matter is deemed submitted pursuant to Local Rule 230(*l*).

5  **II.     LEGAL STANDARD**

6         A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a

7  claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of

8  sufficient facts alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d

9  1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted), *cert. denied*, 132 S.Ct.

10  1762 (2012).  In resolving a 12(b)(6) motion, a court's review is generally limited to the operative

11  pleading.  *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v.*

12  *Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-

13  04 (9th Cir. 2006); *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir.

14  1998).  However, courts may properly consider matters subject to judicial notice and documents

15  incorporated by reference in the pleading without converting the motion to dismiss to one for

16  summary judgment.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

17         To survive a motion to dismiss, a complaint must contain sufficient factual matter,

18  accepted as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

19  129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct.

20  1955, 1964-65 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v.*

21  *U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the well-pleaded

22  factual allegations as true and draw all reasonable inferences in favor of the non-moving party,

23  *Daniels-Hall*, 629 F.3d at 998; *Sanders*, 504 F.3d at 910; *Huynh*, 465 F.3d at 996-97; *Morales v.*

24  *City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, prisoners proceeding

25  pro se are still entitled to have their pleadings liberally construed and to have any doubt resolved

26  in their favor, *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668

27

28  [1] Defendants Hubbard, Cate, Harrington, Soto, Grissom, Davis, Foster, and Freir have not yet appeared in this action. (ECF No. 62-1 at 7.)

1  F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Hebbe*

2  *v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

3      Further, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by

4  the applicable statute of limitations only when 'the running of the statute is apparent on the face of

5  the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th

6  Cir. 2010) (quoting *Huynh*, 465 F.3d at 997), *cert. denied*, 131 S.Ct. 3055 (2011). "'A complaint

7  cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that

8  would establish the timeliness of the claim.'" *Von Saher*, 592 F.3d at 969 (quoting *Supermail*

9  *Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

10  **III.      SUMMARY OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

11      Plaintiff was previously incarcerated at Kern Valley State Prison ("KVSP") in Delano,

12  California, where the events giving rise to this action occurred. Plaintiff names as Defendants

13  former director of CDCR Susan Hubbard; secretary of CDCR Matthew Cate; K. Harrington,

14  former warden of KVSP; M. Biter, acting warden of KVSP; R. Davis and D. Foster, chiefs of the

15  inmate appeals branch for the Director's level of CDCR; R. Grissom, associate warden at KVSP;

16  B. Daveiga, appeals coordinator at KVSP; Soto, correctional captain; M. Phillips and R. Speidell,

17  lieutenants at KVSP; F. Ozaeta, S. Gregory, and M. Betzinger, correctional sergeants at KVSP; J.

18  Garza, correctional officer at KVSP; C. Wegman, community partnership manager at KVSP; Ron

19  Alic, Native American chaplain at KVSP; and Freir and Rankin, psychologists at KVSP.

20  Plaintiff's complaint is composed of three claims, which the Court will discuss below.

21      **A.      Religious Practice**

22      Plaintiff arrived at KVSP on February 11, 2009. Pl.'s Third Am. Compl. ("TAC") ¶ 1.

23  Plaintiff has been a participant in the enhanced outpatient program ("EOP") for mental health care.

24  Since 1994, Plaintiff has been recognized as a sacred "pipe holder" in CDCR. *Id.* ¶ 4. Plaintiff

25  used tobacco as an essential herb in his daily smoking for sacred prayer. *Id.* ¶ 5. Plaintiff owned

26  his own sacred prayer pipe within the CDCR since May of 2001. *Id.* ¶ 6. Plaintiff provided

27  Defendants with documents of documents dated since 2001 through 2009 verifying possession and

28  ownership and possession of prayer pipe, pipe bags, hawk wings, and owl wings. . *Id.* ¶ 7.

1      Defendants refused to enforce state and federal laws which established rights protecting

2   Native American religious practices and sacred religious artifacts from February 11, 2009 to

3   February 11, 2012. *Id.* ¶¶ 8, 9. Plaintiff submitted 602 inmate grievances complaining of sweat

4   lodge access, sacred pipe ceremonies, ceremonial tobacco use, lack of access to a Native

5   American spiritual advisor/chaplain, and not providing Native American religious services for

6   KVSP administrative segregation. *Id.* ¶¶ 9, 10. Plaintiff resubmitted his grievance on March 2,

7   2009. Defendant Garza threatened Plaintiff with removal from the EOP program for the filing of

8   the 602 grievances. *Id.* ¶ 11.

9      On March 24, 2009, Defendant Garza confiscated Plaintiff's sacred pipe, sacred pipe bag,

10  enclosed medicine bundle, two sacred hawk wings, two sacred owl wings, loose eagle feathers and

11  a few spiritual necklaces. *Id.* ¶ 12. Plaintiff complains that Defendant Garza mishandled and

12  wrongfully confiscated sacred religious artifacts. *Id.* Defendant Garza informed Plaintiff that all

13  his religious artifacts would be discarded unless Plaintiff signed a statement that he authorized

14  withdrawal from his prison account to send his items. *Id.* ¶ 22. Plaintiff complied with the demand

15  rather than have the religious items discarded. *Id.* ¶ 25.

16     Plaintiff provided Defendant Garza with a 602 inmate grievance on March 25, 2009. *Id.* ¶

17  27. Defendant Garza told Plaintiff that he did not accept 602 inmate grievances, and told Plaintiff

18  to set it down on the chair in the C-8 block's captain's office. *Id.* ¶ 28. Defendant Garza later told

19  Plaintiff that he could not get his stuff because he kept filing complaints. *Id.* ¶ 30. Defendant

20  Garza stated that he would talk to Defendant Freir and have Plaintiff removed from EOP. *Id.* ¶ 31.

21  Plaintiff informed other Native American inmates, who would contact Defendants Phillips and

22  Soto. *Id.* ¶ 34.

23     Plaintiff spoke to Defendant Ozaeta and informed him of the problem; he stated that he had

24  already been informed by Defendant Garza and had told Defendant Garza that he could do

25  whatever he wanted to do with the Indian stuff. *Id.* ¶ 35. Defendants Captain Soto and Lieutenant

26  Phillips acquired possession of Plaintiff's religious artifacts, and told Plaintiff that they would

27  hold the items while they looked into the problem. *Id.* ¶ 36.

28     Plaintiff was finally able to get a 602 grievance accepted and processed on January 17,

1    2010, which was denied by Defendant Betzinger on March 24, 2010; submitted on April 15, 2010,

2    and partially granted by Defendants Gregory and Grissom on May 19, 2010; submitted on May

3    25, 2010, and denied at the second level by Defendant M. Biter on June 18, 2010; and submitted

4    June 25, 2010, and denied at the third level by Defendants Davis and Foster on October 8, 2010,

5    specifically concerning the wrongful confiscation and deprivation of the religious artifacts. *Id.* ¶

6    40.

7        On August 27, 2010, Defendants Wegman and Alic required Plaintiff to provide them an

8    address to mail his sacred pipe, hawk and owl wings, and a few loose feathers, or the items would

9    be destroyed. *Id.* ¶ 45. Defendants Wegman and Alic refused to provide Plaintiff with a reason for

10   refusing to return the artifacts to Plaintiff, or allow him periodic access or use of the artifacts. *Id.* ¶

11   46. Plaintiff was continually told by Defendants Garza, Betzinger, Gregory, Speidell, Wegman,

12   and Alic that Plaintiff brought on the confiscation and total deprivation because of his filing on

13   March 2, 2009. *Id.* ¶ 47.

14       Plaintiff further alleges that Defendants Hubbard, Cate, Harrington, Biter, Soto, Phillips,

15   Da Veiga, Ozaeta, Betzinger, Gregory, Garza, Wegman, Alic, Grissom, Speidell, Davis, and

16   Foster were informed of and knew that their actions deprived Plaintiff of the use of sacred prayer

17   pipe, weekly sweat lodge ceremonies, and possession of the wings/feathers. *Id.* ¶ 74. Plaintiff was

18   denied Native American religious services between December 12, 2009 and February 1, 2012. *Id.*

19   Plaintiff received only one sweat lodge service between February 2009 and October 2009, and no

20   sweat lodge services from November 2009 to February 2012. *Id.* Plaintiff also complains that the

21   Defendants denied him access to a spiritual advisor, with access once between February 2009 to

22   June 2009 and no access from December 2009 to February 2012. *Id.* Plaintiff complains that other

23   religious groups, such as Catholics and Protestants who have weekly services, Native American

24   religious groups were denied regular, established practices of weekly sweat lodge services or

25   sacred pipe ceremonies. *Id.* ¶ 76.

26       **B.    Processing Appeals**

27       Plaintiff's grievance, KVSP-0-09-00980, first submitted on March 2, 2009, had to be

28   submitted multiple times because it was continuously rejected by Defendant B. Da Veiga, who

1   used exaggerated excuses to prevent process and exhaustion. *Id.* ¶ 48. Defendant Da Veiga

2   rejected the grievance seven times, and the grievance disappeared after Plaintiff re-submitted it for

3   the eighth time. *Id.* ¶ 49. Plaintiff submitted an administrative notice on October 25, 2009 directly

4   to Defendant Harrington concerning the conduct of his subordinates in refusing to respond to 602

5   inmate grievances. Defendant Harrington did not provide any response. *Id.* ¶ 53.

6          **C.     Inmate Attack**

7          On December 12, 2009, Plaintiff was stabbed by two purported Native American inmates

8   on the KVSP facility C yard. *Id.* ¶ 55. Plaintiff as the sacred pipe holder was obligated, as stated

9   by other inmates, to protect the sanctity of the pipe from desecration or wrongful confiscation,

10  with violence if necessary. *Id.* ¶ 57. Plaintiff had complained to Defendants Freir and Rankin and

11  other KVSP staff that his life and safety was placed in danger between February 2009 and

12  December 2009. *Id.* ¶ 58. As a result of this attempted murder, Plaintiff was stabbed numerous

13  times in his face, head, eye, and back, and suffered a punctured lung. *Id.* ¶ 59. Plaintiff was also

14  kicked in the head and face, suffering a swollen face, months of dizzy spells, and continued

15  headaches. *Id.* ¶ 60. Defendants Freir and Rankin stated that in response to Plaintiff filing 602

16  inmate complaint against Defendants Freir, Rankin, and Garza, they removed Plaintiff from the

17  EOP status in May 2009. *Id.* ¶ 63. Defendants' removal came in spite of numerous pleas by

18  Plaintiff to remain in EOP, and knowingly exacerbated the threat of physical harm to Plaintiff. *Id.*

19  ¶ 64. Plaintiff went on suicide watch twice in fear of being attacked. *Id.* ¶ ¶ 65, 66. After the

20  attack, Plaintiff remained in administrative segregation from December 2009 to August 2010

21  pending transfer to another prison. *Id.* ¶ 68. Plaintiff suffered certain deprivations while in

22  administrative segregation. *Id.* ¶ 69.

23         Plaintiff contends a violation of the First, Eighth, and Fourteenth Amendments, and

24  violations of 42 U.S.C. § 1981, § 1983, and § 2000cc, the Religious Land Use and

25  Institutionalized Persons Act of 2000. Plaintiff requests declaratory relief, nominal, compensatory,

26  and punitive damages, and appropriate injunctive relief.

27  ///

28  ///

1    IV.    **DISCUSSION**

2           A.    **Failure to State a Claim**

3                  1.    **Prior Screening Order**

4           On September 28, 2012, this Court issued an order indicating that it had screened

5    Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that it stated a claim against 1)

6    Defendants Hubbard, Cate, Harrington, Biter, Soto, Phillips, Da Veiga, Ozaeta, Betzinger,

7    Gregory, Garza, Wegman, Alic, Grissom, Speidell, Davis, and Foster for violation of the Free

8    Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth

9    Amendment; 2) Defendant Garza for retaliation in violation of the First Amendment; and 3)

10   Defendants Harrington, Biter, Grissom, Soto, Da Veiga, Phillips, Ozaeta, Betzinger, Gregory,

11   Wegman, Alic, Freir, and Rankin for deliberate indifference to Plaintiff's safety in violation of the

12   Eighth Amendment (ECF Nos. 23 & 27.)   While the order finding a cognizable claim did not

13   include a full analysis,[2] the Court conducted the same examination as it does in all screening

14   orders.   In other words, the Court's conclusion was based upon the same legal standards as this

15   12(b)(6) motion.   Insofar as Defendants argue that Plaintiff's claim should be dismissed for failure

16   to state a claim, they wholly fail to acknowledge the Court's prior finding.   28 U.S.C. § 1915A;

17   *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

18          A screening order may not be ignored or disregarded.   *Ingle v. Circuit City*, 408 F.3d 592,

19   594 (9th Cir. 2005).   To the contrary, the existence of a screening order which utilized the same

20   legal standard upon which a subsequent motion to dismiss relies necessarily implicates the law of

21   the case doctrine.   As a result, the moving party is expected to articulate the grounds for the

22   12(b)(6) motion in light of a screening order finding the complaint stated a claim.   *Ingle*, 408 F.3d

23   at 594; *Thomas v. Hickman*, 2008 WL 2233566, *2-3 (E.D. Cal. 2008).

24          In this regard, this Court recently explained:

25   ///

26

---

27   [2] Generally, the Court provides a fully reasoned analysis only where it must explain why the complaint *does not* state
     at least one claim.   In cases where the complaint states only cognizable claims against all named defendants, the Court

28   will issue a shorter screening order notifying plaintiff that his complaint states a claim and that he must submit service
     documents.

1
2
3
4
5
6
7
8
9
10

> If the defendants in a case which has been screened believe there is a good faith basis for revisiting a prior determination made in a screening order, they must identify the basis for their motion, be it error, an intervening change in the law, or some other recognized exception to the law of the case doctrine. *Ingle*, 408 F.3d at 594 ("A district court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result."). The duty of good faith and candor requires as much, and frivolous motions which serve only to unnecessarily multiply the proceedings may subject the moving parties to sanctions. *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1119 (9th Cir. 2000). Parties are not entitled to a gratuitous second bite at the apple at the expense of judicial resources and in disregard of court orders. *Ingle*, 408 F.3d at 594 (The law of the case "doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.") (internal quotation marks and citation omitted); *Thomas*, 2008 WL 2233566, at *3 (for important policy reasons, the law of the case doctrine disallows parties from a second bite at the apple).

11
12
13

*Chavez v. Yates*, No. 1:09-cv-01080-AWI-SKO (PC) (E.D. Cal. Oct. 3, 2013) (ECF No. 41).

14
15
16
17

Here, rather than move forward with this action based upon the Court's findings in the screening order, Defendants now move to dismiss the claims based on the argument that Plaintiff's TAC does not demonstrate the required elements of the claims that the Court previously found cognizable.

18
19

### 2.    Analysis

20

#### a.    First Amendment—Free Exercise of Religion

21
22
23
24
25
26
27
28

The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342 (1987)); *see Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Only beliefs which are both sincerely held and rooted in religious beliefs trigger the Free Exercise Clause. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)); *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981)). Under this standard, "when a prison regulation impinges on inmates'

1  constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

2  interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). First, "there must be a valid, rational

3  connection between the prison regulation and the legitimate government interest put forward to

4  justify it," and "the governmental objective must itself be a legitimate and neutral one." *Id.* A

5  second consideration is "whether there are alternative means of exercising the right that remain

6  open to prison inmates." *Id.* at 90 (internal quotations and citation omitted). A third consideration

7  is "the impact accommodation of the asserted right will have on guards and other inmates, and on

8  the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is

9  evidence of the reasonableness of a prison regulation." *Id.*

10      Defendants argue in their Motion to Dismiss that 1) Defendants Biter, Phillips, Betzinger,

11  Gregory, Ozaeta, and Speidell cannot be liable based solely on their roles as supervisors; 2)

12  Defendants Biter, Da Viega, Betzinger, Gregory, and Speidell's responses to Plaintiff's grievances

13  cannot support a Free Exercise claim; and 3) Plaintiff fails to allege a causal connection between

14  Defendants Wegman and Alec and a constitutional deprivation.   However, the Court is

15  unpersuaded by Defendants argument and stands by its original screening order.  At this stage,

16  Defendants have not shown that the screening order was clearly erroneous so as to avoid

17  application of the law of the case doctrine.  Based on the allegations above, Plaintiff has set forth a

18  plausible claim for relief under the applicable screening standards. *Ashcroft v. Iqbal*, 556 U.S. 662

19  (2009); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Hebbe v. Pliler*, 627 F.3d 338,

20  342 (9th Cir. 2010) (prisoners proceeding pro se in civil rights actions are entitled to have their

21  pleadings liberally construed and to have any doubt resolved in their favor).   Accordingly, the

22  Court recommends denying Defendants' Motion to Dismiss on the basis of Plaintiff's failure to

23  state a Free Exercise claim.

24                    **b.      Fourteenth Amendment—Equal Protection**

25      "The Equal Protection Clause . . . is essentially a direction that all persons similarly

26  situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439

27  (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A prisoner is entitled "to 'a reasonable

28  opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who

1  adhere to conventional religious precepts.'" *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008)

2  (quoting *Cruz v. Beto*, 405 U.S. 319, 321-22 (1972) (per curiam)). To state a claim, a plaintiff

3  must allege facts sufficient to support the claim that prison officials intentionally discriminated

4  against him on the basis of his religion by failing to provide him a reasonable opportunity to

5  pursue his faith compared to other similarly situated religious groups. *Cruz*, 405 U.S. at 321-22;

6  *Shakur*, 514 F.3d at 891; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Lee v. City of*

7  *Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir.

8  1997), *overruled in part on other grounds*, *Shakur*, 514 F.3d at 884-85.

9          Defendants argue in their Motion to Dismiss that Plaintiff fails to state an Equal Protection

10  claim because 1) Defendants did not administer American Indian religious services with

11  discriminatory purpose; 2) Defendants' treatment of Plaintiff was not different from other inmates

12  of other religions housed in Administrative Segregation; and 3) Defendants cannot be held liable

13  based on their positions as supervisors or their responses to Plaintiff's grievances.  Again, the

14  Court is unpersuaded by Defendants argument and stands by its original screening order.  At this

15  stage, Defendants have not shown that the screening order was clearly erroneous so as to avoid

16  application of the law of the case doctrine.  Based on the allegations above, Plaintiff has set forth a

17  plausible claim for relief under the applicable screening standards. *Ashcroft v. Iqbal*, 556 U.S. 662

18  (2009); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Hebbe v. Pliler*, 627 F.3d 338,

19  342 (9th Cir. 2010) (prisoners proceeding pro se in civil rights actions are entitled to have their

20  pleadings liberally construed and to have any doubt resolved in their favor).  Accordingly, the

21  Court recommends denying Defendants' Motion to Dismiss on the basis of Plaintiff's failure to

22  state an Equal Protection claim.

23                 **c.**      **First Amendment—Retaliation**

24          Allegations of retaliation against a prisoner's First Amendment rights to speech or to

25  petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.

26  1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65

27  F.3d 802, 807 (9th Cir. 1995). Within the prison context, a viable claim of First Amendment

28  retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action

1  against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

2  chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

3  advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)

4  (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

5         Plaintiff has properly stated a First Amendment claim for retaliation against Defendant

6  Garza.  Defendants' Motion to Dismiss argues that Plaintiff fails to state a claim because the

7  actual removal of Plaintiff from the EOP level of care was undertaken by Defendant Rankin, and

8  not Defendant Garza. ECF No. 62-1 at 17.  However, Plaintiff alleges in the TAC that Defendant

9  Garza stated that he would talk to Defendant Freir and have Plaintiff removed from EOP. TAC ¶ 31.

10 Plaintiff further alleges that Defendants Freir and Rankin stated that in response to Plaintiff filing a

11 602 inmate complaint against Defendants Freir, Rankin, and Garza, they removed Plaintiff from the

12 EOP status in May 2009. *Id.* ¶ 63.  Plaintiff has set forth a plausible claim for relief under the

13 applicable screening standards.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Wilhelm v. Rotman*, 680

14 F.3d 1113, 1121 (9th Cir. 2012); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (prisoners

15 proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and

16 to have any doubt resolved in their favor).  Accordingly, the Court recommends denying

17 Defendants' Motion to Dismiss on the basis of Plaintiff's failure to state a First Amendment

18 retaliation claim.

19              **d.      Eighth Amendment—Failure to Protect**

20        The Eighth Amendment protects prisoners from inhumane methods of punishment and

21 from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

22 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only

23 those deprivations denying the minimal civilized measure of life's necessities are sufficiently

24 grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9

25 (1992) (citations and quotations omitted). Prison officials have a duty to take reasonable steps to

26 protect inmates from physical abuse. *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982). In

27 order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient

28 to support a claim that officials knew of and disregarded a substantial risk of serious harm to him.

1   *E.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.

2   1998). Mere negligence on the part of the official is not sufficient to establish liability, but rather,

3   the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128.

4       Defendants argue in their Motion to Dismiss that Plaintiff fails to state an Eighth

5   Amendment claims because 1) the confiscation of Plaintiff's sacred pipe did not inform

6   Defendants that Plaintiff was a substantial risk; and 2) that Defendant Rankin's medical decision

7   regarding Plaintiff's mental health classification fails to state a claim.   Plaintiff alleges that

8   Defendants Harrington, Biter, Grissom, Soto, Da Veiga, Phillips, Ozaeta, Betzinger, Gregory,

9   Wegman, Alic, Freir, and Rankin knew of Plaintiff's safety concerns as a direct result of the

10  alleged desecration and wrongful confiscation of the sacred pipe and religious artifacts, and failed

11  to take any actions to protect Plaintiff from the harm. TAC ¶ 96.  Plaintiff has set forth a plausible

12  claim for relief under the applicable screening standards.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009);

13  *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th

14  Cir. 2010) (prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

15  liberally construed and to have any doubt resolved in their favor).   Accordingly, the Court

16  recommends denying Defendants' Motion to Dismiss on the basis of Plaintiff's failure to state an

17  Eighth Amendment claim.

18       **B.     Official Capacity Claims**

19       Plaintiff's amended complaint names Defendants in both their individual and official

20  capacities.   (ECF No. 23 at 6.)   The Eleventh Amendment precludes Plaintiff's suit against

21  Defendants in their official capacity for monetary damages. States and state agencies are protected

22  against suit in federal court by the Eleventh Amendment. *Lovell v. Chandler*, 303 F.3d 1039, 1050

23  (9th Cir. 2002); *Papasan v. Allain,* 478 U.S. 265, 276-77 (1986); *Pennhurst State School & Hosp.*

24  *v. Halderman,* 465 U.S. 89, 100 (1984). The Eleventh Amendment bars civil rights actions in the

25  federal courts by a citizen against a state or its agencies unless the state has waived its immunity or

26  Congress has overridden that immunity. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66

27  (1989); *Stivers v. Pierce,* 71 F.3d 732, 749 (9th Cir. 1995). "The State of California has not

28  waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal

1   court, and the Supreme Court has held that '§ 1983 was not intended to abrogate a State's Eleventh

2   Amendment immunity[.]'" *Dittman v. State of California,* 191 F.3d 1020, 1025-26 (9th Cir. 1999)

3   (citations omitted), *cert. denied,* 530 U.S. 1261 (2000).  Accordingly, the Court recommends that

4   Defendants' Motion to Dismiss be granted in regards to the claims against Defendants in their

5   official capacities for any monetary damages.

6   **V.      CONCLUSION AND RECOMMENDATION**

7         Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' Motion to

8   Dismiss, filed on July 29, 2013, be DENIED in part and GRANTED in part as follows:

9         1.      Defendants' Motion to Dismiss based on Plaintiff's failure to state a claim is

10  DENIED; and

11        2.      Defendants' Motion to Dismiss the claims against Defendants in their official

12  capacity for monetary damages is GRANTED.

13        These Findings and Recommendations will be submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within

15  **thirty (30) days** after being served with these Findings and Recommendations, the parties may

16  file written objections with the Court.  Local Rule 304(b).  The document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

18  failure to file objections within the specified time may waive the right to appeal the District

19  Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

20

21  IT IS SO ORDERED.

22     Dated:   **May 9, 2014**                    /s/ *Dennis L. Beck*

23                                         UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28